IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| NATHAN FREMONT GREEN, <br><br> Plaintiff, <br><br> vs. <br><br> MONTANA STATE PRISON, et al., <br><br> Defendants. | CV 18-00080-H-DLC-JTJ <br><br> FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Nathan Green filed a Complaint pursuant to 42 U.S.C. § 1983 alleging his Eighth and Fourteenth Amendment rights under the United States Constitution were violated while he was incarcerated at Montana State Prison. Mr. Green has failed to state a federal claim upon which relief may be granted and the Complaint should be dismissed.

## I. STATEMENT OF THE CASE

### A. Parties

Mr. Green is a state prisoner proceeding in forma pauperis and without counsel. He is currently incarcerated at Corrections Program in Butte, Montana but was incarcerated at Montana State Prison at all times relevant to his Complaint. Mr. Green names the following Defendants: Warden of Montana State Prison (7/16-11/16), Associate Warden (?/16-11/16), Hearings Officer

1

(?/16-11/16), John Veilleux, Montana State Prison, Trainers/Supervisors, and any unknown person(s) responsible for violation of civil rights through knowledge, approval or inaction. (Complaint, Doc. 2 at 2.)

### B. Allegations

Mr. Green alleges that in July 2016, he was incarcerated at Montana State Prison (MSP) and assigned as a caregiver aid for his cellmate, Defendant John Veilleux. One evening, Mr. Green and Mr. Veilleux became involved in an altercation. Words were exchanged and after Mr. Veilleux threw hot coffee at Mr. Green, the incident became physical. Mr. Green pushed Mr. Veilleux and told him to stop but Mr. Veilleux continued toward him. When Mr. Green had no further room to retreat, he struck Mr. Veilleux in the face. Mr. Veilleux came back swinging striking Mr. Green on the side of his head. Mr. Green responded by punching Mr. Veilleux in the head, face, and torso. Eventually the altercation ended and both prisoners were taken to the infirmary.

Mr. Green received a write-up for fighting and was taken to the unit office for a disciplinary hearing. He alleges he was not given an opportunity to examine the evidence against him, given a chance to present witnesses despite his request to do so, and was not asked whether he wanted legal counsel or an inmate representative to assist him with the proceeding.

The Hearings Officer found Mr. Green guilty of assault which is a more severe write-up than fighting. He was sentenced to ten days in the "hole," had to write a paper, and told that he would be re-classed. Mr. Green told the Hearings Officer that he wanted to appeal but before he could turn in his appeal, he was given a second hearing. He was not given notice of this hearing, an opportunity to present witnesses, examine evidence, or have legal counsel or an inmate representative.

The Hearings Officer informed Mr. Green that the Warden had instructed her to hold another hearing and that the assault charge was to be reduced to a fighting write-up. The Hearings Officer appeared upset and agitated about this. Mr. Green was not given a chance to speak on his own behalf and again plead not guilty. The Hearings Officer found Mr. Green guilty of fighting and sentenced him to 15 days in the hole. He filed an appeal but it was not answered. (Complaint, Doc. 2 at 8-14.)

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

Mr. Green is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are

4

not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (*citing* Fed.R.Civ.P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf*. Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do

5

justice").

## III. ANALYSIS

### A. Mr. Veilleux

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[T]o show that a private action is in fact state action, the plaintiff must show that there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Grijalva v. Shalala*, 152 F.3d 1115, 1119 (9th Cir. 1998) *vacated on other grounds by* 526 U.S. 1096 (1999).

Mr. Veilleux is a private individual who was incarcerated with Mr. Green. Mr. Veilleux's actions with regard to the altercation at issue were taken as a private individual and nothing in Mr. Green's Complaint suggests that Mr. Veilleux was acting under color of state law. As such, Mr. Green cannot state a claim under 42 U.S.C. § 1983 against Mr. Veilleux.

### B. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners

from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a protected liberty interest and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459–60 (1989). If there is no showing of a protected liberty interest, there is no need to address the procedures utilized.

Prisoners are entitled to due process protections when subject to disciplinary sanctions that implicate "a protected liberty interest–that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 987 (9th Cir. 2014)(*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In considering whether conditions impose an atypical and significant hardship, courts may consider the conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003). In *Sandin*, the Supreme Court considered the following factors when finding a thirty-day confinement in disciplinary segregation did not constitute an atypical, significant deprivation: 1) the similarity between the conditions of disciplinary

segregation and the conditions imposed on other inmates; 2) the relatively short duration of the time in disciplinary segregation; and 3) the lack of any direct or inevitable effect on the duration of the prisoner's underlying sentence. *Sandin*, 515 U.S. at 486-87.

Mr. Green presented insufficient facts to establish that his disciplinary sanctions constituted an "atypical or significant hardship" sufficient to trigger a liberty interest. His Complaint contains no "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendants' actions "present[ed] a dramatic departure from the basic conditions of [Mr. Green's] indeterminate sentence," or caused him to suffer an "atypical" or "significant hardship." *Sandin*, 515 U.S. at 484-85; *see also Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

Mr. Green's due process claims arise from a disciplinary write-up which ultimately resulted in him having to serve 15 days in the "hole," he had to write a paper, and was told he would probably be re-classed. He claims this is sufficient to establish a liberty interest because as a result of the write-up he was no longer eligible for pre-release. He claims that at the time of the incident his application for prerelease was under review, he had several years of clear conduct, was nearly done with his treatment, and a likely candidate for pre-release. (Complaint, Doc. 2

at 16.) It is well settled, however, that the United States Constitution does not create a protected liberty interest in a pre-release expectation of parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 10-11 (1979). Mr. Green's time in "the hole" was short and the disciplinary findings against him did not result in an inevitable or direct effect on the duration of his sentence. At most, any deferral of pre-release placement was an indirect, collateral consequence of Mr. Green's disciplinary violation. This is insufficient to establish that this situation presented a departure from the basic conditions of his sentence or caused him to suffer an atypical or significant hardship.

    Mr. Green's Complaint falls short of alleging conditions that have been found to be an atypical and significant hardship. *See Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005) (holding that prisoner was subject to an atypical and significant hardship by being given indefinite detention in a supermax prison where no conversation was permitted and lights were on for 24 hours a day); *Serrano v. Francis*, 345 F.3d 1071, 1078–79 (9th Cir. 2003)(holding that disabled prisoner placed in administrative segregation established an atypical and significant hardship because prisoner was denied use of his wheel chair for more than two months that created severe difficulty for prisoner to practice hygiene and forced prisoner to drag himself across a vermin-infested floor).

9

Mr. Green has not alleged the deprivation of a protected liberty interest, therefore, his due process claim regarding his disciplinary write-up fails to state a claim.

**C. Retaliation**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, a prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005).

Thus, a prisoner must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. *Rhodes*, 408 F.3d at 568. Mere allegations of retaliatory motive or conduct will not suffice. A prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a

constitutional right. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989).

Mr. Green's allegations fail to state a retaliation claim because he did not engage in protected conduct prior to being resentenced to 15 days in the hole instead of 10 days and even if he did, the adverse action taken against him was not because of the protected conduct.

Mr. Green alleges that the Hearings Officer asked him if he wanted to appeal and he said yes but he was taken for a second hearing before he turned in his appeal. Thus, the issue is whether the mere request for an appeal form constitutes "protected conduct" for the purposes of the First Amendment. Neither the Ninth Circuit nor the Supreme Court has decided whether a prisoner's verbal complaints constitute protected conduct. *See Torres v. Arellano*, 2017 WL 1355823, at *13 (E.D. Cal. Mar. 24, 2017) (recognizing the lack of Ninth Circuit or Supreme Court authority on the issue). In the context of an employee's claim that she was terminated in retaliation for her threat to file a charge with the EEOC, the Ninth Circuit noted that it saw "no legal distinction to be made between the filing of a charge which is clearly protected and threatening to file a charge." *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n.3 (9th Cir. 1982) (citation omitted). Moreover, numerous district courts in California which

have addressed this issue have held that an inmate's threat to file a prison grievance is entitled to First Amendment protection. *See Garcia v. Strayhorn*, 2014 WL 4385410, at *6 (S.D. Cal. Sept. 3, 2014) ("Review of current caselaw indicates that an inmate's threat to file a prison grievance constitutes protected speech."); *Christ v. Blackwell*, 2016 WL 4161129, at *8 (E.D. Cal. Aug. 4, 2016) ("Most courts that have addressed the issue have concluded that an inmate's threat to file a grievance constitutes protected speech unless it is delivered in an argumentative, confrontational, or disorderly manner."); *see, e.g., Clinton v. Green*, 2014 WL 2931176, at *8 (C.D. Cal. Apr. 22, 2014) (holding that inmate's "expression of intent to file a grievance or lawsuit against" prison's principal of education was "an established form of protected First Amendment conduct"), accepted by 2014 WL 2931178 (C.D. Cal. June 24, 2014); *West v. Dizon*, 2014 WL 794335, at *5-6 (E.D. Cal. Feb. 27, 2014) (holding that prisoner's threat to file 602 inmate appeal against correctional officer was protected conduct), accepted by 2014 WL 1270584 (E.D. Cal. Mar. 26, 2014); *Wilkerson v. Wheeler*, 2009 WL 688900, at *5 & n.8 (E.D. Cal. Mar. 13, 2009) (holding that plaintiff's expression of intent to file grievance and writing names of prison guards and witnesses were "protected First Amendment activities"), accepted by 2009 WL 3841864 (E.D. Cal. Nov. 17, 2009).

One district court has found that attempting to obtain a grievance form to complain about an alleged constitutional violation constituted protected conduct under the First Amendment for retaliation purposes. *Newman v. Hartley*, 2012 WL 2532247, 3 (E.D. Cal June 29, 2012). This Court, however, has located no cases which indicate that merely asking for an appeal form at the conclusion of a disciplinary hearing constitutes protected conduct. It is not clear to this Court that under these circumstances, Mr. Green's affirmative response to the Hearing Officer's question regarding an appeal constituted "protected conduct."

Even if Mr. Green's request constituted protected conduct, the adverse action taken against him was not because of that request. Mr. Green indicated in his Complaint that the Hearings Officer told him that the Warden had instructed her to hold another hearing and reduce the charge and she was upset and agitated about this. Thus, Mr. Green cannot establish that the adverse action (the increase in the sentence) was based upon Mr. Green's request for an appeal form but rather because the Warden instructed the Hearings Officer to conduct a second hearing. A "plaintiff alleging retaliation, for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision." *Saurianness Pasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)(*citing Mt. Healthy City School Dist. Bd. of Educ. v.*

13

*Doyle*, 429 U.S. 274, 287 (1977)); *CarePartners, LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008), cert. denied, 129 S.Ct. 2383 (2009).

Mr. Green admits in his Complaint that the Hearing Officer's agitation regarding the second hearing did not arise from Mr. Green's request for an appeal form but because the Warden had instructed her to hold a second hearing. Thus, Mr. Green has not shown that the increase in the sentence was done in retaliation for his "protected activity" and he has not shown that his request for an appeal form (even if it was "protected conduct") was a substantial or motivating factor in the officer's decision to increase his sentence from 10 days to 15 days. As such, Mr. Green's retaliation claim fails as a matter of law.

## III. CONCLUSION

The Court has considered whether Mr. Green's Complaint is frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). Mr. Green's allegations fail to state a plausible claim upon which relief may be granted.

For the reasons set forth above, the Court finds that the deficiencies set forth here could not be cured by the allegation of additional facts. *See* Fed. R. Civ. P 12(b)(6); *Iqbal*, 556 U.S. at 678. Amendment would be futile because any new facts consistent with the complaint could not cure the deficiencies identified in the

complaint. *Schreiber Distrib. Co. V. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986). The Court therefore recommends that the case be dismissed without leave to amend and with prejudice for failure to state a claim. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Based upon the foregoing, the Court issues the following:

### RECOMMENDATIONS

1. This matter should be DISMISSED for failure to state a federal claim.

2. The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit. The record makes plain the Complaint lacks arguable substance in law or fact.

4. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Green

failed to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Green may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 27th day of March, 2019.

                               */s/ John Johnston*
                               John Johnston
                               United States Magistrate Judge

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Mr. Green is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.